# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) Criminal No. 20-218-17 | |
| MANUEL J. MURRIETTA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Presently before the Court is Defendant's Motion to Dismiss, in which he contends that the Indictment against him should be dismissed due to unnecessary delay in bringing him to trial and because his Sixth Amendment right to a speedy trial has been violated. (*See* Docket Nos. 943, 944, 962). The Government opposes Defendant's Motion. (Docket No. 957). After careful consideration of the parties' positions, Defendant's Motion will be denied.

**I.    BACKGROUND**

On August 25, 2020, Defendant and 26 co-defendants were charged in Count One of the Indictment in this case with conspiracy to possess with intent to distribute and distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, for conduct occurring from in and around October 2018 until in and around June 2020. (Docket No. 3). An arrest warrant was issued for Defendant on that same date. (Docket No. 23).

Defendant surrendered to the United States Marshals Service in the District of Arizona on September 3, 2020, he had an initial appearance there and was ordered to be detained pending a detention hearing. (Docket No. 226-1). Following a detention hearing, a magistrate judge in the District of Arizona released Defendant on bond and the Government moved to revoke the release order. (Docket Nos. 131, 226-6, 418 at 4-5, 8-9). Defendant was transported to this District for

further proceedings, and Attorney Joseph S. Otte was appointed to represent him pursuant to the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A. (Docket Nos. 226-11, 361, 371).

After extensive briefing, on December 23, 2020, this Court granted the Government's motion, revoked Defendant's bond, and ordered that he shall be detained pending trial or other disposition of this matter. (*See* Docket Nos. 472, 473). In so ruling, the Court found that there is no condition or set of conditions which will reasonably assure Defendant's appearance as required and the safety of the community if he were to be released. (*See* Docket No. 472 at 13-21).

In December 2020, Defendant filed his first motion for temporary release from pretrial detention, contending that his health conditions coupled with the presence of Covid-19 at the facility where he was then detained constituted a compelling reason for temporary release under 18 U.S.C. § 3142(i). (Docket No. 410). In February, 2021, Defendant filed his second motion under § 3142(i), arguing for temporary release from the Allegheny County Jail, where he had been transferred, because of a Covid-19 outbreak at the facility. (Docket No. 561). The Court denied Defendant's motions for temporary release without prejudice on January 29, 2021 and March 22, 2021, respectively, finding in each instance that his medical conditions did not constitute a sufficiently compelling reason for release but, even if they did, the original grounds for his pretrial detention continued to support his detention. (Docket Nos. 545, 609).

On May 21, 2021, the Court received a letter from Defendant complaining about Attorney Otte's representation of him. (Docket No. 687). Attorney Otte filed a motion to withdraw as counsel on May 24, 2021, indicating that the attorney-client relationship could not be salvaged. (Docket No. 688). After holding video status conferences on the matter on May 26, 2021 and June 10, 2021, the Court ultimately granted Defendant's request for the appointment of new counsel,

granted Attorney Otte's motion to withdraw, and appointed Attorney Ryan H. James to represent Defendant on June 15, 2021.  (Docket Nos. 695, 700, 702, 703).

Defendant previously moved for, and was granted, extensions of time to file pretrial motions for the following periods of time: November 25, 2020 to January 11, 2021; December 31, 2020 to March 12, 2021; March 11, 2021 to May 3, 2021; and May 3, 2021 to September 3, 2021. (Docket Nos. 385, 386, 487, 494, 587, 589, 657, 658).  Prior to extending the pretrial motion filing deadline to September 3, 2021, the Court held a status conference with counsel for Defendant and all co-defendants on April 23, 2021, at which time the Government advised as to the large volume of discovery involved in this case, and numerous defense counsel indicated that discovery review was ongoing and additional time was required to conduct same.  (Docket No. 629).

Around the time of the September 3, 2021 pretrial motion filing deadline, counsel for all co-defendants filed motions for extension of time to file pretrial motions due to the voluminous discovery under review and related determinations concerning the propriety of pretrial motions. (*See e.g.*, Docket Nos. 723, 731, 747, 748, 752).  Subsequently, the pretrial motion filing deadline was extended to December 3, 2021, March 3, 2022, June 3, 2022, and then September 2, 2022. (*See e.g.*, Docket Nos. 749, 819, 914, 1002).

Defendant did not file a motion for extension of time to file pretrial motions when the September 3, 2021 deadline expired or thereafter.  The Court's staff inquired with Attorney James by email whether a motion for extension of time would be forthcoming on Defendant's behalf, and Attorney James indicated that it would not.  Despite same, Defendant did not lodge an objection to any of his co-defendants' motions for extension of time to file pretrial motions for any time period after September 3, 2021 through the present deadline of September 2, 2022.

In February and March 2022, the Court conducted an individual telephone conference with each co-defendant's counsel and Government counsel. (Docket Nos. 865, 874-879, 882-885, 887-889, 892-895, 900, 901, 903, 904). Overall, counsel for the co-defendants indicated that additional time was required to review extensive discovery and/or for client consultation relative to the review of same and next steps in the litigation. Consequently, the co-defendants filed motions for extensions of time to file pretrial motions as previously detailed. As for Defendant, Attorney James indicated at the telephone conference held on February 24, 2022, that he was continuing to confer with Defendant on the review of discovery and that pretrial motions were being contemplated (despite the fact that Defendant had not filed a motion for extension of time after the September 3, 2021 deadline expired to preserve his right to file pretrial motions). (Docket No. 883).

Subsequently, on March 16, 2022, Defendant filed the pending Motion to Dismiss. (Docket Nos. 943, 944). The Government filed its Response in Opposition thereto on April 18, 2022, and Defendant filed a Reply on May 2, 2022. (Docket Nos. 957, 962). The matter is now ripe for disposition.

**II.     The Parties' Arguments Relative to Defendant's Motion to Dismiss**

Defendant argues in his Motion that the Indictment against him should be dismissed under Fed. R. Crim. P. 48(b)(3), which provides that the Court "may dismiss an indictment . . . if unnecessary delay occurs in bringing a defendant to trial." (Docket No. 943). Defendant also contends that his Sixth Amendment right to a speedy trial has been violated for reasons explained in his supporting brief, thus dismissal of the Indictment is warranted. (*Id.*). Defendant's Motion does not contend that a violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, has occurred.

(*See* Docket No. 962 at 1) (stating that Defendant "couched his request for relief solely on the Sixth Amendment  - not the Speedy Trial Act . . .").

Although Defendant's Motion indicates he is moving for dismissal under Rule 48(b)(3), he clarifies in his briefing that his request for relief is "based solely on the Sixth Amendment." (Docket No. 962 at 1).  To that end, Defendant complains that "there[] [has] been no effort to define exactly what 'speedy' meant to the Framers when drafting the Sixth Amendment," and "the Supreme Court has never addressed the question of the Founding-era consensus as to what constituted a speedy trial . . . ."  (Docket No. 944 a 1-2).  After providing an historical outline indicating that trials customarily occurred seasonally or bi-annually at common law, (*see id.* at 4-9), Defendant posits that, "[t]o the Framers . . . a speedy trial would[] [have], at minimum, been a biannual or seasonal occurrence." (*Id.* at 9).  Defendant next surveys Supreme Court jurisprudence addressing the right to a speedy trial, (*see id.* at 11-17), and laments that the Court's "seminal multifactor balancing test" set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), "[s]till … prevails," despite some critics having argued that *Barker* "distort[s] the meaning of the constitutional language prescribing the right . . . ." (*Id.* at 15, 16).  In Defendant's estimation, precedent is an inadequate guide to defining what constitutes a speedy trial, so he next reviews data which he submits demonstrated an early trend to disposing of criminal cases quarterly, but that trend has been draw out over time.  (*Id.* at 17-20).  Defendant's interpretation of that data "confirms a trend (or commitment) that  . . . [j]ustice . . . is, and ought to be, done on a biannual basis." (*Id.* at 21). In sum, Defendant contends that "from an originalist and textualist perspective" a speedy trial for Sixth Amendment purposes "is a period ranging anywhere between one and six months," but he concedes that "[n]o court, particularly the Supreme Court, has backed this position to date." (*Id.* at 22-23).  Nonetheless, given his position that the time for a speedy trial is no greater than six

5

months, Defendant asserts that his time for being brought to trial is well past due because he has been in pretrial detention since September 2020 and he sought no further extensions of time since May 3, 2021.  (*Id.* at 23).

The Government responds that Defendant's Motion should be denied because his speedy trial rights have not been violated.  (*See* Docket No. 957).  Although a significant portion of the Government's Response argues that no violation has occurred under the Speedy Trial Act, which Defendant does not contest, the Government notes as to the Sixth Amendment that controlling precedent recognizes that pretrial delay should be assessed according to "the peculiar circumstances of the case." (*Id.* at 3).  Relevant here, the Government notes that "[d]elay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge" as is involved in this case. (*Id.*) (citing *United States v. Claxton*, 766 F.3d 280, 293 (3d Cir. 2014)).  According to the Government, any delay that has occurred does not violate Defendant's statutory or Sixth Amendment speedy trial rights because it is a product of complications caused by the Covid-19 pandemic and the fact that he is joined for trial with co-defendants with whom he jointly engaged in criminal activity.  (*Id.* at 4, 7).

### III.     ANALYSIS

As stated, Defendant does not contend that the Indictment must be dismissed for violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*,[1] but rather moves to dismiss under Federal

---

1       To give effect to the Sixth Amendment right to a speedy trial, Congress enacted the Speedy Trial Act, which sets "specified time limits after arraignment or indictment within which criminal trials must be commenced." *United States v. Rivera Constr. Co.*, 863 F.2d 293, 295 (3d Cir. 1988).  The Speedy Trial Act requires that a criminal defendant be brought to trial "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1). However, the Speedy Trial Act also recognizes the need for flexibility depending on the circumstances of particular cases and therefore "includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006); *see* 18 U.S.C. § 3161(h).  Relevant here, § 3161(h)(6) provides for the exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).  The Third Circuit Court of Appeals has observed

Rule of Criminal Procedure 48(b)(3) and the Sixth Amendment to the United States Constitution. For reasons that follow, dismissal is not warranted by rule, nor is it constitutionally required under the Sixth Amendment.

### A. Dismissal of the Indictment is not Warranted Under Rule 48(b)(3)

Defendant moves to dismiss the Indictment under Federal Rule of Criminal Procedure 48(b)(3), which allows a Court to dismiss an indictment "if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3). A district court's decision to grant or deny a Rule 48(b) motion is discretionary. *United States v. Rodriguez-Mendez*, Crim. No. 1:17-15-1, 2021 WL 3025898, at *9 (W.D. Pa. July 16, 2021) (citations omitted).

"The Third Circuit Court of Appeals has noted that Rule 48(b) is both 'a vehicle for enforcing a defendant's speedy trial right' and 'also a restatement of the court's inherent power to dismiss a case simply for want of prosecution.' " *Rodriguez-Mendez*, 2021 WL 3025898, at *9 (quoting *United States v. Dreyer*, 533 F.2d 112, 113 n. 1 (3d Cir. 1976)). As observed in *Dreyer*, when a Rule 48(b) claim is based on prejudice arising from the delay, rather than simply want of prosecution, the case should be treated on constitutional grounds encompassing the Rule 48(b)

---

that, "under this provision, and until severance is granted, an exclusion applicable to one defendant applies to all codefendants." *Claxton*, 766 F.3d at 292 (internal quotation marks and citation omitted). Because Defendant is joined as a defendant with 26 other co-defendants, any exclusion applicable to his co-defendants also applies to him pursuant to § 3161(h)(6). For present purposes, Defendant had his own exclusion in place from November 25, 2020 until September 3, 2021. (Docket Nos. 385, 386, 487, 494, 587, 589, 657, 658). On motion of numerous co-defendants, the pretrial motion filing deadline was then extended to December 3, 2021, March 3, 2022, June 3, 2022, and then September 2, 2022, and the Court made contemporaneous findings that the ensuing delays should be excluded from the speedy trial computation in the interest of justice under 18 U.S.C. § 3161(h)(7)(A). (*See e.g.*, Docket Nos. 749, 819, 914, 1002). Consequently, the speedy trial exclusions applicable to the co-defendants from December 3, 2021 until September 2, 2022 apply to Defendant.
    One final point bears noting with regard to the Speedy Trial Act – its protections "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time." *United States v. Lattany,* 982 F.2d 866, 870 n.5 (3d Cir. 1992). However, because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.' " *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)).

7

claim. *Dreye*r, 533 F.2d at 113 n. 1. Although Defendant cites Rule 48(b)(3) in his Motion, his argument appears to relate solely to a Sixth Amendment challenge, which will be addressed below.

Nonetheless, to the extent Defendant's reference to Rule 48(b)(3) is intended to be a request for dismissal based on the Court's inherent authority to dismiss for want of prosecution, the Motion is denied on that basis.

As explained by another court in this District, an exercise of a court's inherent authority is appropriate only in certain limited circumstances:

> An exercise of a Court's inherent authority must satisfy two requirements: (1) it "must be a reasonable response to the problems and needs confronting the court's fair administration of justice," and (2) it "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Dietz v. Bouldin*, ___ U.S. ___, 136 S. Ct. 1885, 1892, 195 L.Ed.2d 161 (2016) (citations and internal quotation marks omitted). Importantly, a court may exercise its inherent authority only when it is necessary to address improper conduct and to ensure respect for the proceedings. *United States v. Wright*, 913 F.3d 364, 371 (3d Cir. 2019).

*Rodriguez-Mendez*, 2021 WL 3025898, at *10. "Thus, under these principles, a court may dismiss an indictment based upon its inherent authority only if the Government engaged in misconduct, the defendant was prejudiced, and no less severe remedy was available to address the prejudice." *Id.* (citing *Wright*, 913 F.3d at 371).

Here, the Court will not exercise its discretion to dismiss the Indictment under Rule 48(b) for want of prosecution because Defendant has not alleged, nor has he shown, that the Government has engaged in misconduct in delaying the trial in this case. *See Wright*, 913 F.3d at 372 (dismissal under court's inherent authority not warranted when Government performed diligently and professionally). Further, there is nothing in the record evidencing deliberate or oppressive action by the Government. *See Hunt v. United States*, 456 F.2d 582, 584 (3d Cir. 1972) ("An indictment

8

should not be dismissed unless there has been deliberate or oppressive action by law enforcement officials"). Rather, the delay in this case has resulted from motions for extension of time to file pretrial motions filed by Defendant and/or his co-defendants in this complex drug conspiracy case, which has been litigated during the Covid-19 pandemic. *See Rodriguez-Mendez*, 2021 WL 3025898, at *10 (denying motion to dismiss indictment under the court's inherent authority pursuant to Rule 48(b) where the defendant did not show any misconduct or oppressive action by the Government). Accordingly, the Court will not exercise its discretion to dismiss the Indictment under Rule 48(b)(3).

## B. Defendant's Sixth Amendment Right to a Speedy Trial Has Not Been Violated

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial. . . ." U.S. CONST. amend. VI. As summarized above, Defendant complains that "there[] [has] been no effort to define exactly what 'speedy' meant to the Framers when drafting the Sixth Amendment," and "the Supreme Court has never addressed the question of the Founding-era consensus as to what constituted a speedy trial . . . ." (Docket No. 944 at 1-2). Consequently, Defendant makes a "novel constitutional argument" contending that "from an originalist and textualist perspective" a speedy trial for Sixth Amendment purposes "is a period ranging anywhere between one and six months." (Docket Nos. 944 at 22-23; 962 at 1). Despite the fact that Defendant concedes "[n]o court, particularly the Supreme Court, has backed this position to date," (Docket No. 944 at 23), he invites this Court to hold that a speedy trial violation occurs for Sixth Amendment purposes if a defendant is not brought to trial within six months. (*See id.*) (suggesting that "speedy" for Sixth Amendment purposes "is no greater than six months").

The Court declines Defendant's invitation to so hold. Initially, the Court is unable to

determine that the original public meaning of a "speedy trial" would require that a defendant be brought to trial within six months.[2]  This Court is bound by controlling precedents of the United States Supreme Court and United States Court of Appeals for the Third Circuit, and, notably here, *Barker v. Wingo*, 407 U.S. 514 (1972).  Although Defendant acknowledges that the Supreme Court's "seminal multifactor balancing test" set forth in *Barker* "[s]till . . . prevails," (Docket No. 944 at 15, 16), he did not analyze the *Barker* factors, let alone argue that application of those factors to his case demonstrates that his Sixth Amendment right to a speedy trial has been violated.  As discussed next, consideration of the *Barker* factors here leads this Court to conclude that Defendant's Sixth Amendment speedy trial right has not been violated.

In *Barker*, 407 U.S. at 530-32, the United States Supreme Court set forth a four-factor test for examining alleged Sixth Amendment violations.  "The inquiry focuses on: (1) the length of the delay before trial; (2) the reason for the delay and, specifically, whether the government or the defendant is more to blame; (3) the extent to which the defendant asserted his speedy trial right; and (4) the prejudice suffered by the defendant." *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014) (citing *Barker*, 407 U.S. at 530-31).  None of these factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533.

The first factor asks whether the delay is of sufficient length to trigger analysis of the remaining factors.  *See Doggett v. United States*, 505 U.S. 647, 651-52 (1992).  If the delay is

---

[2] The Supreme Court has found instances in which the historical record is deemed as far too sparse to provide specific answers. *See e.g., California v. Green*, 399 U.S. 149, 176 (1970) (Harlan, J., concurring) (limited value of history on confrontation clause); *Dickey v. Florida*, 398 U.S. 30, 41 n. 2 (1970) (Brennan, J., concurring) (sparse legislative record on speedy trial guarantees). Thus, the Court has acknowledged that "the intent of the Framers is often an elusive quarry." *Williams v. Florida*, 399 U.S. 78, 92 (1970).

unusually lengthy, then the remaining *Barker* factors must by analyzed. *See Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (citing *Barker*, 407 U.S. at 530) ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.")). The delay between the Defendant's detention which began on September 3, 2020 to the present is 21 months, which is sufficient to trigger further review. *See id.* ("[A] delay of 14 months is . . . not dispositive in and of itself, but is sufficiently lengthy to warrant an inquiry into the other facts.") (citation omitted).

The Court notes that an unusual delay may be justified where the case involves a complex conspiracy. *United States v. Thompson*, 716 F. App'x 69, 72 (3d Cir. 2017) (observing that delay of 26 months of pretrial detention "is not so severe as to weigh heavily in favor of [the defendant], particularly since this case was part of a large-scale prosecution against a total of thirty-three defendants engaged in a complex drug distribution conspiracy") (citing *Barker*, 407 U.S. at 531) (noting that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.")). The instant case is a complex drug conspiracy charge that involves 27 defendants,[3] who, along with their counsel, have had to review extensive discovery involving Title III wiretaps and analyze whether to file pretrial motions, all during the ongoing Covid-19 pandemic, which explains much of the delay. Nevertheless, the Court must proceed to the three other *Barker* factors in light of this delay.

As to the second factor – the reason for delay – the Court must calculate the delay attributable to each party and differentiate the delay caused by Defendant from that caused by the

---

3    As set forth in the Court's Memorandum Opinion granting the Government's motion to revoke the release order and revoking Defendant's bond, "[t]he Government submits that this case arises from the investigation of a [drug trafficking organization] which was responsible for distributing more than 100 kilograms of cocaine that was obtained from a source of supply in Mexico and sold by members of the organization in Pennsylvania, California, Arizona and other states. . . ." (Docket No. at 472 at 14).

Government.  *See Claxton*, 766 F.3d at 294.  " '[D]elay caused by the defense weighs against the defendant,' including 'delay caused by the defendant's counsel.' "  *United States v. Battis*, 589 F.3d 673, 679-80 (3d Cir. 2009) (quoting *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009)).  Delay caused by the Government is grouped into three categories and each carries different weight:  (1) "A deliberate effort by the Government to delay the trial in order to hamper the defense weighs heavily against the Government;" (2) "A more neutral reason such as negligence or overcrowded courts also weighs against the Government, though less heavily;" and (3) "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Claxton*, 766 F.3d at 295 (citation omitted).

As discussed, 21 months have elapsed from Defendant's arrest to the present.  Of that time, Defendant clearly acquiesced to delay through September 3, 2021 by requesting extensions of time to file pretrial motions until that date.  Accordingly, that period of delay weights against Defendant.  The remaining delay after that point through the present (approximately nine months) is attributable to the co-defendants, who have requested extensions of time to file pretrial motions in order to review extensive discovery in this large-scale drug conspiracy prosecution, which has been complicated by the fact that the case has been litigated during the Covid-19 pandemic.

Even if the delay attributable to the co-defendants could somehow be imputed to the Government because it consented to the requested extensions, at best, it is a neutral reason for the delay which does not weigh heavily against the Government, particularly given that Defendant never objected to any of the co-defendants' requested extensions.  The Court additionally notes that there is nothing in the record to suggest any deliberate effort by the Government to hamper the defense.  All told, the delay in this case is attributable either to Defendant or his co-defendants, thus the reason for the delay weighs against finding that Defendant's Sixth Amendment right to a

speedy trial has been violated.

Next, the third *Barker* factor requires the Court to assess " '[w]hether and how a defendant asserts his [speedy-trial] right,' including 'the frequency and force' of such assertions." *Velazquez*, 749 F.3d at 181-82 (quoting *Barker*, 407 U.S. at 529, 531). This factor permits "a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client, or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." *Barker*, 407 U.S. at 529.

Defendant has asserted his right to a speedy trial through the instant Motion, but it comes 21 months into this case. *See United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance). Although Defendant notes that he "personally sought no further extensions of time since May 3, 2021," (*see* Docket No. 944 at 23), (which, when granted by the Court, extended Defendant's pretrial motion filing deadline to September 3, 2021[4] (*see* Docket No. 658)), he never lodged an objection to any of the subsequent motions for extension of time filed by his co-defendants, which have extended the pretrial motion filing deadline to September 2, 2022, nor has he filed a motion to sever. Given the lack of frequency and force of Defendant's objections to any delay in this case, the Court finds that the third factor weighs against him.

---

4   Defendant should be cognizant that the time for filing pretrial motions is governed by Federal Rule of Criminal Procedure 12(c)(2), which provides that the Court may extend or reset the deadline for pretrial motions at any time before trial. Fed. R. Crim. P. 12(c)(2). If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely, but the Court may consider the defense, objection, or request if the party shows good cause. Fed. R. Crim. P. 12(c)(3). The co-defendants in this case have sought and obtained an extension of time to file pretrial motions by September 2, 2022. Defendant may wish to consider whether he should seek a similar extension of time to the extent he intends to file any other pretrial motions in this case.

The final and most important factor to consider is prejudice to Defendant from the delay. *See Hakeem*, 990 F.2d at 760. A defendant who claims a speedy trial violation cannot rely on the "possibility of prejudice." *Id.* (citation omitted). "A defendant can establish specific prejudice by showing that he was subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about the impending trial, or that his defense was impaired as a result of the delay." *Battis*, 589 F.3d at 682 (quoting *Barker*, 407 U.S. at 532). The Supreme Court has also acknowledged that excessive delay can lead to a presumption of prejudice, but added that "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria . . . it is part of the mix of relevant facts, and its importance increases with the length of delay." *Doggett*, 505 U.S. at 655-56.

Defendant does not claim actual or presumptive prejudice stemming from any delay in this case. As to actual prejudice, Defendant has not alleged in his briefing that he has been subject to oppressive pretrial incarceration, that he has suffered anxiety and concern, or that his defense has been, or will be, impaired as a result of any delay. Defendant also does not argue presumptive prejudice. Again, 21 months have elapsed from Defendant's arrest to the present. Of that time, Defendant clearly acquiesced to delay through September 3, 2021 by requesting extensions of time to file pretrial motions until that date. The remainder of time after that point through the present is not prejudicial because it was caused by co-defendants, who have requested extensions of time to file pretrial motions while their review of extensive discovery in this large-scale drug conspiracy case remains ongoing. *See Barker*, 407 U.S. at 531 (acknowledging that longer delays are tolerable based upon the complexity of a particular case). Even if any delay after September 2021 could be attributed to the Government, that nine month period is less than the fourteen-and-a half months of pretrial incarceration at issue in *Hakeem*. *See* 990 F.2d at 771 (declining to find that a fourteen-

14

and-a half month period of pretrial incarceration was *per se* prejudicial). Accordingly, the Court concludes that Defendant has not suffered from a presumption of prejudice, nor has he identified a specific occurrence of prejudice, thus the final *Barker* factor weighs against him.

Finally, Defendant's suggestion that a speedy trial should be defined to mean that the trial must occur within six months is plainly impractical and unworkable given that every criminal case is unique as to the number of defendants, the number and type of offenses charged, the volume and type of discovery, the overall complexity of the case, and any unforeseen circumstances that may arise (such as litigating a case during an unprecedented global pandemic or a defendant's dissatisfaction with his counsel, which necessitates the appointment of new counsel – both of which have occurred here). In this Court's estimation, analyzing the Supreme Court's *Barker* factors, discussed above, provides the necessary flexibility to account for these variables, whereas Defendant's request that the Court specify the precise timeframe which would apply in all cases clearly does not. This is the likely reason that "[n]o court, particularly the Supreme Court, has backed this position to date," as Defendant concedes. (Docket No. 944 at 23).

In sum, in examining Defendant's constitutional speedy trial claim under the *Barker* four factor test, the Court does not find a Sixth Amendment speedy trial violation under the circumstances of this case.

## IV.     CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss the Indictment based on speedy trial grounds is denied.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: June 13, 2022

cc/ecf:  All counsel of record